## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: MARK POWELL and POWELL DEVELOPMENT COMPANY, INC., | : : : : | Chapter 12 5:10-BK-06255-JJT |
| Debtors. | : | |

| | | |
|---|---|---|
| CHESAPEAKE APPALACHIA, LLC and STATOIL USA ONSHORE PROPERTIES, INC., | : : : : | |
| Appellants, | : : : | 3:13-CV-00035 (JUDGE MARIANI) (APPEAL FROM BANKRUPTCY COURT) |
| v. | : : | |
| MARK POWELL and POWELL DEVELOPMENT COMPANY INC., | : : : | |
| Appellees. | : | |

## MEMORANDUM OPINION

### I.   Introduction

This case comes before the Court on appeal from an opinion issued by Bankruptcy

Judge John Thomas on September 18, 2012 (Doc. 2-5). Appellants—creditors in the

underlying action—raise two issues on appeal. First, they argue that the Bankruptcy Court

erred when it decided that title to oil and gas under a lease does not vest in the lessee at

the time of execution, as a matter of law and regardless of the language used in the lease

itself. (See Notice of Appeal, Doc. 2, at 4.) Second, they argue that the Opinion erred in

concluding, again as a matter of law, that all oil and gas leases are unexpired leases of real

property that are subject to rejection pursuant to 11 U.S.C. § 365. (*See id.*) For the reasons

that follow, the Court will vacate the Bankruptcy Court's Opinion as to these two issues.

## II.     Factual Background and Procedural History

Appellees Mark Powell and the Powell Development Company are debtors who filed

for relief under Chapter 12 of the Bankruptcy Code. The debtors entered into an oil and gas

lease on August 2, 2006 granting nonparty Anadarko E&P Company oil and gas subsurface

rights on Powell's 62.22 acres of land. (*See* Oil & Gas Lease, Doc. 2-2, at 1.) Anadarko later

assigned an interest in the lease to Appellant Chesapeake Appalachia, LLC, (*see* Partial

Assignment, Doc. 2-12, at 2), which then entered into a development agreement with an

affiliate of Appellant Statoil USA Onshore Properties, LLC., (*see* Memorandum of

Development Agreement, Doc. 2-13, at 2).

The debtors moved to reject the oil and gas lease under the Bankruptcy Code. (*See*

*generally* Am. Mot. to Avoid Oil and Gas Lease, Doc. 2-2.) In so moving, they argued that

the lease and its associated percentage of revenues and royalties were "grossly under

valued" and therefore should be voided pursuant to 11 U.S.C. § 365, (*see id.* at ¶ 6), a

provision of the Bankruptcy Code that allows a trustee to "reject an executory contract or

unexpired lease of residential real property or of personal property of the debtor," 11 U.S.C.

§ 365(d)(2).

This raised the question of whether the oil and gas lease is in fact such an executory

contract or unexpired lease of real property subject to rejection under section 365. Following

briefing and an evidentiary hearing, the Bankruptcy Court determined that it was, by relying

on the recent Pennsylvania Supreme Court case *T.W. Phillips Gas and Oil Co. v. Jedlicka*,

42 A.3d 261 (Pa. 2012), which was decided after the period for argument on the debtors'

Motion had expired. (*See* Bkr. Op., Doc. 2-5, at 6.)

The *Jedlicka* case concerned a landowner who conveyed a lease to an oil and gas

company in 1928. The lease contained the following habendum clause:

> To have and to hold the above-described premises for the sole and only
> purpose of drilling and operating for oil and gas with the exclusive right to
> operate for same for the term of two years, and as long thereafter as oil or
> gas is produced in paying quantities, or operations for oil or gas are being
> conducted thereon, including the right to drill other wells.

*Jedlicka*, 42 A.3d at 264. The term "in paying quantities" was not defined in the lease. *Id.* In

the mid-2000s—i.e., nearly eighty years after the parties originally agreed to the lease—the

oil and gas company sought to add additional wells. *Id.* The landowner objected on the

basis "that there has not been continuous production in paying quantities on the wells

because, in 1959, T.W. Phillips [the lessee] suffered a loss of approximately $40 as result of

operations under the . . . lease." *Id.* The Pennsylvania Supreme Court ultimately defined "in

paying quantities" such that the 1959 loss did not invalidate the lease. *See id.* at 276.

Before so ruling, however, the Supreme Court embarked on a brief exposition of

Pennsylvania's law of oil and gas leases:

> In order to better assess the parties' arguments in the case *sub judice*, we
> consider briefly the unique characteristics of an oil and gas lease. As this
> Court recognized in *Brown v. Haight*, "[t]he traditional oil and gas 'lease' is far
> from the simplest of property concepts. In the case law oil and gas 'leases'

3

have been described as anything from licenses to grants in fee." 435 Pa. 12, 15, 255 A.2d 508, 510 (1969). Generally, however, the title conveyed in an oil and gas lease is inchoate, and is initially for the purpose of exploration and development. *Calhoon v. Neely*, 201 Pa. 97, 101, 50 A. 967, 968 (1902); *Burgan v. South Penn Oil Co.*, 243 Pa. 128, 137, 89 A. 823, 826 (1914) ("The title is inchoate, and for purposes of exploration only until oil is found." (internal quotation marks omitted)); *see also Hite v. Falcon Partners*, 13 A.3d 942 (Pa. Super. 2011) (same); *Jacobs v. CNG Transmission Corp.*, 332 F. Supp. 2d 759, 772 (W.D. Pa. 2004) (same).

If development during the agreed upon primary term is unsuccessful, no estate vests in the lessee. If, however, oil or gas is produced, a fee simple determinable is created in the lessee, and the lessee's right to extract the oil or gas becomes vested. *Calhoon*, 201 Pa. at 101, 50 A. at 968; *Jacobs*, 332 F. Supp. 2d at 772–73. A fee simple determinable is an estate in fee that automatically reverts to the grantor upon the occurrence of a specific event. *Brown*, 435 Pa. at 18, 255 A.2d at 511. The interest held by the grantor after such a conveyance is termed "a possibility of reverter." *Higbee Corp. v. Kennedy*, 286 Pa. Super. 101, 428 A.2d 592, 595 (1981). Such a fee is a fee simple, because it may last forever in the grantee and his heirs and assigns, "the duration depending upon the concurrence of collateral circumstances which qualify and debase the purity of the grant." *Id.* at 595 n.4 (quoting *Slegel v. Lauer*, 148 Pa. 236, 241, 23 A. 996, 997 (1892)).

*Id.* at 267.

The Bankruptcy Court interpreted this passage to "construct a special interpretation

of an oil and gas lease as conveying a title that is inchoate and allowing exploration only

until oil or gas is found, regardless of the linguistics used in the lease." (*See* Doc. 2-5 at 5.)

This was supposedly because of the fugitive nature of oil and gas. Because "oil and gas in

their natural state are migratory and tend generally to move toward areas of lesser

pressure" such that "the oil and gas under one tract may be drained by a well on another

tract overlying the same reservoir," the Bankruptcy Court opined that the Pennsylvania

Supreme Court found it necessary to create a new rule in *Jedlicka* that interpreted oil and

4

gas leases differently from leases for solid minerals such as coal, which the Bankruptcy
Court recognized have historically been treated not as contracts but as grants of real
property. (See id. at 3-5 (quoting Wayne C. Byers & Timothy N. Tuggey, Oil and Gas
Leases and Section 365 of the Bankruptcy Code: A Uniform Approach, 63 Am. Bkr. L.J.
337, 338-39 (1989)).) Thus, according to the Bankruptcy Court, Jedlicka provided that "until
oil or gas produced, no freehold estate vests in the lease." (Id. at 6.) It was only once oil and
gas is produced that "a fee simple determinable is created in the lessee, and the lessee's
right to extract the oil or gas becomes vested." (Id. (quoting Jedlicka, 42 A.3d at 267).) From
this, the Bankruptcy Court extrapolated that, "[l]ogically then, if, at the time bankruptcy was
filed and there was no oil or gas produced—as is true in [the instant] case—then contract
principles would apply including an interpretation of whether this was an executory contract
or lease." (Id.)

The Bankruptcy Court went on to conclude that, pursuant to these principles, the
lease before it qualified as "an agreement 'to use real property'" which "thus falls within the
bankruptcy definition of lease of real property." (Id. at 7 (citing 11 U.S.C. § 365(m).)
Because no oil or gas had been produced under the lease, the lease remained voidable
under section 365. It was only "if gas had vested in Lessees prior to bankruptcy filing [that]

the executory nature of the contract would cease, and we . . . would be talking about the law of real property rather than an executory contract." (*Id.*)[1]

Nonetheless, even though the Bankruptcy Court believed that the debtors' lease was subject to rejection under section 365, it went on to deny the debtor's Motion on the narrow evidentiary ground that "[n]o evidence was submitted to suggest that this Court should approve either the rejection or the assumption of the lease." (*Id.; see also id.* at 8 ("The short of it is that, whether the oil and gas lease is considered an unexpired lease or an executory contract, the Debtor has demonstrated no justification for rejection and no authority for avoidance.").)

No one challenged the Court's decision to deny the Motion. However, the creditors did object to the finding that their lease is the type of instrument subject to rejection under section 365. (*See* Mot. to Alter or Amend Court's Order, Doc. 2-6, at 1.) The creditors argued instead that, pursuant to binding Pennsylvania Supreme Court precedent that *Jedlicka* did not alter, "an oil and gas lease conveys a fee-simple determinable estate in the oil and gas to the lessee at the time the lease is executed." (*Id.* at ¶ 8.) The creditors also took issue with the Court's determination that the actual language of the oil and gas lease was irrelevant and that *Jedlicka* turned *all* oil and gas leases into contracts that originally give only inchoate title to use real property "regardless of the linguistics used." (*See id.* at ¶¶ 9-11.) The Bankruptcy Court denied the creditors' Motion for Reconsideration, on the

---

[1] The Bankruptcy Court equivocated somewhat as to whether the lease constitutes an unexpired lease or an executory contract. However, determining the exact nature of the lease was not necessary to its decision, because it ultimately denied the rejection motion.

6

grounds that any error was harmless, because the challenge was only to its reasoning and not to its holding, and that such reasoning would have no precedential value in other cases. (*See* Mot. for Recons. Oral Argument Tr., Doc. 2-9, at 38:6-42:19.) The creditor oil and gas companies appealed.

## III.    Jurisdiction and Standard of Review

The District Court has jurisdiction to hear this appeal from a Bankruptcy Court's final order pursuant to 28 U.S.C. § 158(a)(1). We review "the Bankruptcy Court's findings of fact for clear error and exercise plenary review over questions of law." *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 573 (3d Cir. 2007).

## IV.    Analysis

### a.  Jurisdiction

Before the Court addresses the merits of the appeal, Appellees challenge the Court's jurisdiction to even hear this case at all. That is, Appellees argue that (1) the Appellants do not have standing to bring this appeal, since they "won" in the Court below, and (2) the appeal is unripe, insofar as the parties are not adverse because they both support the Bankruptcy Court's holding. (*See* Appellees' Br., Doc. 16, at 7-13.)

#### i. Standing

"[T]he standing requirement in bankruptcy appeals is more restrictive than the 'case or controversy' standing requirement of Article III" more commonly seen in federal court. *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995). Specifically, in a

bankruptcy appeal, "an appellant must qualify as a 'person aggrieved' to be eligible for appellate review of a bankruptcy court order." *In re Dykes*, 10 F.3d 184, 188 (3d Cir. 1993). "Originally set forth in the Bankruptcy Act of 1898, the 'persons aggrieved' test now exists as a prudential standing requirement that limits bankruptcy appeals to persons 'whose rights or interests are "directly and adversely affected pecuniarily" by an order or decree of the bankruptcy court.'" *In re Combustion Engineering, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004) (quoting *In re Dykes*, 10 F.3d at 187). Thus, under the current test, "[l]itigants are 'persons aggrieved' if the order diminishes their property, increases their burdens, or impairs their rights." *In re Dykes*, 10 F.3d at 187 (citing *In re Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983)). "Whether an appellant is a 'person aggrieved' is generally considered a question of fact for the district court." *Id.* at 188.

Under these principles, standing plainly exists. Though the Appellants successfully defeated the debtors' Motion to Reject, the Bankruptcy Court's opinion nonetheless alters the Appellants' interests in their lease to their apparent detriment. That is, Appellants believed that their lease gave them a fee estate in the property that vested when the lease was executed. But the Bankruptcy Court found instead that the lease was either an executory contract or an unexpired lease. This decision is now the law of the case and may have collateral estoppel effects in related proceedings. This is relevant because either an executory contract or an unexpired lease is less valuable to the Appellants than a vested

fee estate, insofar as, among other things, the former are subject to rejection under the Bankruptcy Code while the latter is not.

Therefore, the Bankruptcy Court's opinion diminished Appellants' property rights and qualified them squarely as "persons aggrieved" under the tests set forth above. Because an order has been issued that binds all of the parties and that diminishes certain of their property rights, the ultimate disposition of the Motion does not matter. *Cf., e.g., Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 334, 100 S. Ct. 1166, 1171-72, 63 L. Ed. 2d 427 (1980) ("In an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits of the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III."); *Dolenc v. Love*, 40 F.3d 656, 657 (3d Cir. 1994) ("[A]lthough 'ordinarily, a prevailing party cannot appeal from a district court judgment in its favor,' there are 'exceptions to this rule,' and 'one exception arises when the prevailing party is aggrieved by the collateral estoppel effect of a district court's rulings.'") (quoting *In re DES Litig.*, 7 F.3d 20, 23 (2d Cir. 1993) (internal alterations and citation omitted). Because Appellants qualify as "persons aggrieved" under the law of Bankruptcy standing (and *a fortiori* also meet the requirements of the less-stringent Article III standing), then they may pursue this appeal, notwithstanding the Bankruptcy Court's favorable judgment.

### ii.  Ripeness

Appellees' ripeness argument also fails. The ripeness doctrine is an outgrowth of

Article III's "case or controversy" requirement that "in each case . . . the facts alleged, under

all the circumstances, show that there is a substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality . . . ." *Maryland Casualty Co. v.*

*Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941). "The case

or controversy requirement has engendered numerous justiciability doctrines that further

define the limits of federal jurisdiction. Among these is the ripeness doctrine, which

determines when a proper party may bring an action." *Armstrong World Indus. by Wolfson*

*v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992). "[R]ipeness is peculiarly a question of timing,"

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580, 105 S. Ct. 3325, 3332, 87

L. Ed. 2d 409 (1985), whose "basic rationale is to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements," *Abbott Lab.*

*v. Garner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 1515, 18 L. Ed. 2d 681 (1967), *overruled on*

*other grounds*, *Califano v. Sanders*, 430 U.S. 99, 106, 97 S. Ct. 980, 985, 51 L. Ed. 2d 192

(1977). "Accordingly, the ripeness doctrine requires that the challenge grow out of a 'real,

substantial controversy between parties' involving a 'dispute definite and concrete.'"

*Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (quoting *Babbitt v. United Farm*

*Workers Nat'l Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 2308, 60 L. Ed. 2d 895 (1979)).

Here, the injury that Appellants allegedly suffered is already fully completed. The

Bankruptcy Court entered a final judgment that altered their property rights. That decision

aggrieved the Appellants and caused them to appeal. There is no question of resolving

abstract disagreements; the only issue is the very concrete one of whether the Bankruptcy

Court applied section 365 and the Pennsylvania case law correctly to the parties' lease—

and on this issue the parties take opposite positions. Therefore, this case plainly presents a

justiciable case or controversy. The ripeness doctrine is inapplicable.

### b.  The Bankruptcy Court's Opinion

Having concluded that this appeal is properly before the Court, we now turn to the

substance of the Bankruptcy Court's Opinion.

Under Pennsylvania law, a "lease is in the nature of a contract and is controlled by

principles of contract law." *Willison v. Consolidation Coal Co.*, 637 A.2d 979, 982 (Pa.

1994). "It is to be construed in accordance with the terms of the agreement as manifestly

expressed. The accepted and plain meaning of the language used, rather than the silent

intentions of the contracting parties, determines the construction to be given the

agreement." *Id.* (internal citations omitted).

The Bankruptcy Court cited this as though it were a new principle that *Jedlicka*

created to supersede preexisting case law and to transform oil and gas leases from real

property conveyances to mere contracts. (*See* Doc. 2-5 at 6.) It wrote:

> Other courts have considered an oil and gas lease a transfer of an interest in
> real property and therefore not an executory contract. *Laugharn v. Bank of*

11

*America Nat. Trust & Savings Ass'n*, 88 F.2d 551 (9th Cir. 1937). This is the argument of the Lessees who advance that Pennsylvania law classifies an oil and gas lease as a transfer of realty relying on *Lesnick v. Chartiers Natural Gas Co.*, 889 A.2d 1282, 1284 (Pa. Super. 2005). *Lesnick*, however, has been superceded by the Pennsylvania Supreme Court, which illuminated this area of the law in the [*Jedlicka*] case by explaining that *this type of "lease" is in the nature of a contract and controlled by the principles of contract law*.

(*Id.* (emphasis added).)

This passage misconstrues the case law. In articulating these principles, *Jedlicka* merely repeated verbatim what was already a well-established aspect of Pennsylvania law as pre-*Jedlicka* cases consistently held that an oil and gas lease is in the nature of a contract and is controlled by principles of contract law. *See, e.g., Willison*, *supra*; *see also Amoco Oil Co. v. Snyder*, 478 A.2d 795, 798 (Pa. 1984) ("This Court . . . has held that a lease is in the nature of a contract and is controlled by principles of contract law.") (citing *Ezy Parks v. Larson*, 454 A.2d 928, 934 (Pa. 1982)); *Jones v. Levin*, 940 A.2d 451, 455 (Pa. Super. 2007) ("[A] lease is in the nature of a contract and is controlled by principles of contract law.") (quoting *Willison*, 637 A.2d at 982); *Jacobs v. CNG Transmission Corp.*, 332 F. Supp. 2d 759, 772 (W.D. Pa. 2004) ("In the first instance, 'a lease is in the nature of a contract and is controlled by principles of contract law.'") (quoting same) (internal alterations omitted).

However, these are merely principles of interpretation. They are restatement of the general rule that a written instrument is construed according to its terms. *Cf., e.g., Szymanowski v. Brace*, 987 A.2d 717, 719-20 (Pa. Super. Ct. 2009) (discussing the

12

interpretation of terms in oil and gas leases). Pennsylvania courts have not understood the

fact that leases, as written instruments, are interpreted according to contract principles to

mean that leases themselves are contracts and nothing more. Rather, these interpretive

principles coexist alongside "the well understood recognition that the execution [of] an oil

and gas lease reflects a conveyance of property rights within a highly technical and well-

developed industry, and thus certain aspects of property law as refined by and utilized

within the industry are necessarily brought into play." *Jacobs*, 332 F. Supp. 2d at 772;[2] *see*

*also McCausland*, 78 A.3d at 1100 ("[A]pplicable to this [oil and gas] lease dispute are the

principles of contract and property law.").

  Thus, despite use of the term "lease," Pennsylvania case law rejects "the notion that

oil and gas leases are governed by landlord/tenant legal principles." *Nolt v. TS Calkins*

*Assocs., LP*, 96 A.3d 1042, 1046 (Pa. Super. Ct. 2014) (citing *Derrickheim Co. v. Brown*,

451 A.2d 477, 479 (Pa. Super. Ct. 1982)). "Although the interpretation of oil and gas leases

has proved to be 'troublesome' for the courts of this Commonwealth, the law has developed

to provide that an oil and gas lease . . . actually involves the conveyance of property rights."

*Id.* (internal citation omitted). For instance, in *Brown v. Haight*, 255 A.2d 508 (Pa. 1969), the

Pennsylvania Supreme Court considered a conveyance of oil and gas rights to be a grant of

fee simple when the conveyance did not use the term "lease," but, like *Jedlicka*, included a

---

[2] This U.S. district court case has been repeatedly cited as persuasive authority by Pennsylvania appellate courts—including its Supreme Court—on its interpretation of the nature of oil and gas leases. *See, e.g., Jedlicka*, 42 A.3d at 267; *McCausland v. Wagner*, 78 A.3d 1093, 1100 & n.3 (Pa. Super. Ct. 2013); *Hite v. Falcon Partners*, 13 A.3d 942, 945 (Pa. Super. Ct. 2011). We accordingly treat it as accurately representing Pennsylvania law.

"habendum clause which states: 'To have and to hold the said lands and rights unto the Grantee for the term of twenty years from the date hereof, and As much longer as . . . oil or gas is found or produced in paying quantities.'" *Brown*, 255 A.2d at 511. In another case concerning coal mining rights, that same Court wrote: "The term 'lease' is in some respects a misnomer. *What is really involved is a transfer of an interest in real estate*, the mineral in place." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 387, n.1 (Pa. 1986) (collecting cases) (emphasis added).

Given this background, we find two important errors in the Bankruptcy Court's reasoning.

First, even if we give *Jedlicka*'s commentary on inchoate title the broadest interpretation possible, that case simply does not transform an oil and gas lease into any kind of contract, including either an executory contract or an unexpired lease under the Bankruptcy Code. In the *Nolt* decision (issued after this appeal), the Pennsylvania Superior Court considered a situation in which, pursuant to *Jedlicka*, it was "undisputed that no production has occurred on the Property, and so the estate has remained inchoate." *Nolt*, 96 A.3d at 1047 n.3. The Superior Court noted that "[a]n inchoate estate 'has no attribute of property, is without appreciable value, and the interest to which it relates is nonexistent and may never exist.'" *Id.* (quoting *In re Good's Estate*, 182 A.2d 721, 724 (1962)). Even still, it held that

> the fact that the right here did not ripen into a fee simple determinable and
> that the property right did not vest does not diminish the fact that *our law has*

14

> *evolved to unequivocally establish that rights to oil and gas are to be treated*
> *as transfers of estates in property and not leaseholds.* As such, we adhere to
> the long tradition of treating oil and gas leases as the sale of an estate in land
> . . . .

*Id.* (emphasis added). In other words, the inchoate nature of the lessors' title merely

affected the value of their conveyance and not its nature as an interest in real property. An

estate in property has still been conveyed even if the title remains inchoate. Thus, it was

error to conclude that *Jedlicka* transformed oil and gas leases from conveyances of real

property to the types of contracts subject to rejection under 11 U.S.C. § 365. *Jedlicka* itself

evidences no intention to transform oil and gas leases into contracts, and the relevant cases

that followed have not understood it to do so.

Second, it was error to conclude that *Jedlicka* created a one-size-fits-all

interpretation of oil and gas leases that applies "regardless of the linguistics used in the

lease." (*See* Doc. 2-5 at 5.) Before *Jedlicka* began its discussion of inchoate leases it

reaffirmed the longstanding principles, discussed above, that "a lease is in the nature of a

contract and is controlled by principles of contract law" and that it "must be construed in

accordance with the terms of the agreement as manifestly expressed." *Jedlicka*, 42 A.3d at

267. It then went on, in the section on which the Bankruptcy Court relied, to state that

"*[g]enerally* . . . the title conveyed in an oil and gas lease is inchoate and is initially for the

purpose of exploration and development." *Id.* (emphasis added). By framing the issue in this

way, *Jedlicka* appears to be only discussing general principles that hold true in the absence

of countervailing considerations. Indeed, if this were not the case, then its opinion would be

inherently contradictory, as there would be no way to harmonize its statement that an oil

and gas lease must be interpreted in accordance with its actual terms with its broader

generalizations on what kind of title oil and gas leases typically provide. Of course, this

apparent contradiction is easily resolved when we read the two pieces of *Jedlicka* in

conjunction with one another. When we do this, it becomes clear that the opinion simply

discusses certain general principles while also noting that the written terms of the lease are

paramount. By their nature as general principles, the former need not apply if other

circumstances, such as contrary language in the lease, render them inapplicable.

Our interpretation is bolstered by the fact that, in the three years since *Jedlicka* was

decided none of the other Pennsylvania courts that have relied on it have interpreted it as

altering the legal definition of all oil and gas leases under Pennsylvania law, regardless of

the language used in the lease. *See, e.g., Frost Family, L.P. v. NCL Appalachian Partners,

L.P.*, 67 A.3d 790 (Mem.) (Pa. 2013); *Seneca Res. Corp. v. S&T Bank*, 122 A.3d 374 (Pa.

Super. Ct. 2015); *Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177 (Pa. Super. Ct.

2013); *Humbertson v. Chevron U.S.A., Inc.*, 75 A.3d 504 (Pa. Super. Ct. 2013); *Caldwell v.

Kriebel Res. Co.*, 72 A.3d 611 (Pa. Super. Ct. 2013); *Heasley v. KSM Energy, Inc.*, 52 A.3d

341 (Pa. Super. Ct. 2012). Quite to the contrary, all of these cases cite *Jedlicka* to establish

that leases are interpreted pursuant to contract principles. The Third Circuit's single

reference to *Jedlicka* does the same. *See Smith v. Steckman Ridge, LP,* 590 Fed. App'x

189, 193 (3d Cir. 2014).

We are aware of two Pennsylvania Superior Court cases that could be interpreted to support the Bankruptcy Court's proposition. In *Nolt*, 96 A.3d at 1046-47, the Superior Court quoted *Jedlicka* with the broad prefatory statement that "[t]he law of this Commonwealth provides" what *Jedlicka* held as to oil and gas leases starting as inchoate titles that ripen into fee simples determinable. However, the precise language of the lease in *Nolt* was irrelevant to its decision, which concerned whether enforcement of an oil and gas lease could be barred under the statute of frauds contained in the Landlord and Tenant Act. *Id.* at 1046. The Superior Court held that it could not, because oil and gas leases are not "governed by landlord/tenant legal principles," but rather constitute "a transfer of a property right in the oil and gas." *See id.* at 1046-47. The lease's actual language was irrelevant to this determination, which was merely a legal conclusion about the scope of the statute of frauds. Thus, *Nolt*'s broad characterization of *Jedlicka*'s commentary does not impact the principles of contract interpretation that we apply.

Likewise, in *Sabella v. Appalachian Development Corp.*, 103 A.3d 83 (Pa. Super. Ct. 2014), the Superior Court began its analysis "with our Supreme Court's observations regarding 'the unique characteristics of an oil or gas lease.'" *Sabella*, 103 A.3d at 101 (quoting *Jedlicka*, 42 A.3d at 267). It then quoted the same section of *Jedlicka*'s opinion quoted extensively herein. *See id.* The statement that this portion of the *Jedlicka* opinion describes "the unique characteristics of an oil or gas lease" could be interpreted to hold that *Jedlicka* applies to all such leases. But again, *Sabella* discussed these principles in an

17

entirely different context: whether an alleged trespasser had constructive notice of oil, gas, and mineral rights recorded with the County Register and Records Office. *See id.* at 86-89, 98-102. This too goes to the nature of the thing recorded in the Register and Records Office, rather than the principles by which that thing is interpreted. Therefore, though both *Nolt* and *Sabella* appear to give precedential weight to *Jedlicka's* holding, neither one provides support for the proposition that this holding overturns established principles of contractual interpretation, such that a written instrument must be interpreted according to certain inflexible generalizations and not by what its words actually convey.

In summary, there is nothing in *Jedlicka* or the later cases applying it that supports the Bankruptcy Court's opinion that it created a general rule to apply to all leases regardless of the linguistics used in each one. Rather, *Jedlicka* affirms the opposite: that leases must be interpreted according to their written language, though it then digresses into a statement of general principles. We cannot read its statement of general principles as contradicting its statement on contracts without rendering the entire Opinion contradictory and self-defeating. Nor can we assume that the Pennsylvania Supreme Court would overturn the ancient principle that written instruments are interpreted according to the language contained in each one in the absence of its explicitly saying so. Therefore, we conclude that the Pennsylvania Supreme Court did not intend *Jedlicka* to overturn established principles of contract interpretation, and did not so hold.

Therefore, it was error for the Bankruptcy Court to disregard the language of the lease. Because that Court ultimately denied the debtors' Motion to Reject the Lease, we need not determine now exactly what rights the lease conveyed, nor need we remand for the Bankruptcy Court to so determine. Thus, we do not hold with the Appellants that their conveyance necessarily granted them a fee simple determinable that vested at the time of conveyance. They may be correct, if the terms of their lease support their position. But interpreting their lease is not necessary to resolve this appeal and, therefore, must be postponed until a later day. Instead, we will vacate the Bankruptcy Court's determination that oil and gas leases are either executory contracts or unexpired leases and will remand for further proceedings consistent with this Opinion. Any further proceedings must evaluate the creditors' lease in accordance with its actual terms.

By so ruling, the Court eschews the Bankruptcy Court's seemingly inflexible determination, based on its reading of *Jedlicka*, that an oil and gas lease—and indeed, *any* oil and gas lease—conveys as a matter of law "title that is inchoate and allowing exploration until oil or gas is found, regardless of the linguistics used in the lease." (Doc. 2-5 at 5.)

Does every oil and gas lease convey a fee simple determinable with the possibility of reverter on execution? The Supreme Court's decision in *Jedlicka* informs us that it has not adopted a general rule of law that would answer this question. *Jedlicka* instead has reaffirmed the well-established principle that what interest is conveyed by the instrument is to be determined by its expressed terms and the "accepted and plain meaning of the

19

language used" in it. Thus, the granting and habendum clauses, as well as all other terms of the instrument, will determine what interest has been conveyed.

## V.    Conclusion

For the foregoing reasons, the Bankruptcy Court's decision is **VACATED** insofar as it holds that the parties' oil and gas lease is either an executory contract or an unexpired lease. Its holding denying debtors' Motion to Avoid the Lease remains unaltered. A separate Order follows.

Robert D. Mariani
United States District Judge

20